## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

John F. Seibert,

    Appellant,

v.

Cedar Rapids Lodge & Suites, LLC,
James T. Rymes, Rhonda Coborn,
Michael Coborn, Scott Shisler, and
Julie Shisler,

    Appellees.

Case No. 17-CV-04756 (SRN)

**MEMORANDUM OPINION
AND ORDER**

Alexander J. Beeby and Thomas J. Flynn, Larkin Hoffman Daly & Lindgren, Ltd., 8300 Norman Center Drive, Suite 1000, Minneapolis, Minnesota 55437, for Appellant.

Amy J. Swedberg, Maslon LLP, 90 South Seventh Street, Suite 3300, Minneapolis, Minnesota 55402, and Chloe F.P. Golden and Robert H. Miller, Sheehan Phinney Bass & Green P.A., 1000 Elm Street, Manchester, New Hampshire 03105, for Appellees.

SUSAN RICHARD NELSON, United States District Judge

    Appellant John F. Seibert ("Seibert") appeals the September 28, 2017 decision of the United States Bankruptcy Court for the District of Minnesota ("Bankruptcy Court") in the matter of *Cedar Rapids Lodge & Suites, LLC v. Seibert (In re Seibert)*, 16-BKY-41993, 16-ADV-4103, which granted summary judgment to Appellees Cedar Rapids Lodge & Suites, LLC, James T. Rymes, Rhonda Coborn, Michael Coborn, Scott Shisler, and Julie Shisler ("Appellees") in their adversary proceeding against Seibert. The Bankruptcy Court held that certain judgment debt that Seibert owes to Appellees was excepted from discharge in

his bankruptcy. For the reasons set forth herein, the Court affirms the decision of the Bankruptcy Court.

## I. BACKGROUND

Seibert is a real-estate developer. He was involved in a hotel development project in Cedar Rapids, Iowa. After the development project failed, Appellees sued Seibert in United States District Court for the Northern District of Iowa.[1] (*See Cedar Rapids Lodge & Suites, LLC v. JFS Dev't, Inc.*, No. 09-cv-175 (LRR/JSS) (N.D. Iowa).) Appellees alleged that Seibert fraudulently induced them to invest in the hotel development project and then mishandled the financing, construction, and management of the project. (Tr. of Sept. 26, 2017 Hr'g [Doc. No. 12] ("Tr."), at 43.) The complaint alleged several claims, including civil racketeering ("RICO") and fraud. (*Id.* at 43-44.)

The Bankruptcy Court accurately described the Iowa case as "a lengthy and highly contentious lawsuit." (*Id.*) During two and a half years of litigation, the Iowa court ruled on many motions to compel and motions for sanctions. (*See Cedar Rapids*, No. 09-cv-175 [Doc. Nos. 95, 103, 108, 113, 171, 193, 216, 246].) Less than a year after the suit was filed, the Iowa court granted Seibert's attorney's motion to withdraw from the case for Seibert's failure to pay fees. (*Id.* [Doc. No. 95] (Ruling on Pretrial Motions, at 2-4).) After that, Seibert continued to participate in the litigation pro se. (*See* Tr., at 44.) The Iowa court granted Appellees' motion to compel Seibert to produce certain computer systems and hardware, and it ordered Seibert to pay the cost of forensic computer examination. (*Cedar*

---

[1] The Iowa case involved several additional plaintiffs and defendants whose involvement is not relevant here.

*Rapids*, No. 09-cv-175 [Doc. No. 164] (Order dated Oct. 3, 2011, at 2-3).)  When Seibert failed to pay the cost of the forensic computer examination, the Iowa court granted Appellees' motion for contempt of court.  (*Id.* at 7-10.)

Appellees moved several times for sanctions against Seibert, asking the Iowa court to enter a default judgment for Seibert's discovery violations.  (*See id.* [Doc. Nos. 105, 136, 204, 238].)  The Iowa court consistently declined to enter default judgment as a sanction.  (*See id.* [Doc. Nos. 108, 193, 216, 246].)  The court found insufficient proof of bad faith in Seibert's discovery and pretrial practices to justify the harsh penalty of default judgment.  (*See id.* [Doc. No. 216] (Order dated Jan. 18, 2012, at 3-4, 7-8).)  The Iowa court did enter a sanction against Seibert for failure to comply with witness and exhibit disclosure deadlines.  The court held that Seibert would not be permitted to present witnesses or exhibits at trial that had not been disclosed in compliance with pre-trial disclosure deadlines.  (*Id.* at 8-10.)

After his attorney withdrew, Seibert continued to actively litigate the Iowa case for some time, filing motions and briefs opposing Appellees' motions.  (*See id.* [Doc. Nos. 109, 116, 140-41, 148, 165].)  He filed a motion for sanctions against the Plaintiffs' attorney, which was denied.  (*Id.* [Doc. Nos. 166, 193].)  In late 2011, Seibert was diagnosed with cancer.  He filed a motion to continue the trial date, at his oncologist's recommendation, until 90 days after a scheduled surgery.  The Iowa court granted the motion to continue.  (*Id.* [Doc. Nos. 205, 216].)  Five months later, Seibert filed a motion to continue the trial date for 90 additional days while he began radiation treatment, which was also granted.  (*Id.* [Doc. Nos. 237, 246].)

On August 20, 2012, two days before the final pretrial conference was scheduled to take place, Seibert sent the Iowa court a letter stating, "due to my health I will not be attending the pre-trial or trial in the upcoming weeks. I had been hopeful that my condition would improve, however the effects and side effects of my treatments have not subsided." (*Id.* [Doc. No. 253].) Seibert did not move for another continuance and did not submit any additional documentation from his oncologist. When Seibert did not appear at the final pretrial conference, Appellees moved for a default judgment under Federal Rule of Civil Procedure 55(a). (*Id.* [Doc. No. 255].)

The Iowa court delayed ruling on the motion for default judgment and scheduled an evidentiary hearing to determine damages. (*Id.* [Doc. No. 257].) Seibert moved to continue the evidentiary hearing. The court denied Seibert's motion, instructing him that he could appear telephonically to accommodate his cancer treatments. (*Id.* [Doc. No. 261].) Seibert did not appear, in person or remotely, at the evidentiary hearing.[2] (*Id.* [Doc. No. 267] (Order dated Oct. 24, 2012, at 2).) The court issued an order granting a default judgment for Seibert's failure to appear, and awarding $12,176,735.22 for Seibert's fraud and RICO violations. (*Id.* at 3-10.) The Iowa court made no specific factual findings about Seibert's liability. Instead, the court stated that the "'facts alleged in complaint are taken as true, except facts relating to the amount of damages.'" (*Id.* at 3 (quoting *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001).)

---

[2] Appellees presented evidence that Seibert was in fact traveling in Florida during the evidentiary hearing, for personal and business reasons, but the Bankruptcy Court gave this fact "no weight" in its decision. (Tr., at 45.)

On June 30, 2016, Seibert declared bankruptcy under Chapter 7 of the Bankruptcy Code. (Tr., at 42-43.) Appellees filed an adversary action in the United States Bankruptcy Court for the District of Minnesota, seeking a determination that Seibert's judgment debt from the Iowa case was not dischargeable in bankruptcy. (Appellant's App. [Doc. No. 16], Ex. 2 [Doc. No. 16-1] (Adv. Compl.).) Appellees moved for summary judgment, arguing that the debt was dischargeable under 11 U.S.C. § 523(a)(2)(A), because it was a debt obtained by "false pretenses, a false representation, or actual fraud." Appellees asserted that the Iowa court's judgment collaterally estopped Seibert from contesting that his judgment debt was obtained by fraud. (Tr., at 42.)

The Bankruptcy Court agreed. The Bankruptcy Court held that the only contested issue was whether collateral estoppel is applicable to a default judgment like the one entered against Seibert. (Tr., at 51.) The Bankruptcy Court stated that "courts agree that a default judgment can serve as a basis for applying collateral estoppel if the party against whom the judgment is used had a full and fair opportunity to defend the claims." (*Id.* at 52 (citing *In re Bush*, 62 F.3d 1319 (11th Cir. 1995); *In re Brandl*, 179 B.R. 620 (Bankr. D. Minn. 1995)).)

The Bankruptcy Court rejected Seibert's argument that he did not have a full and fair opportunity to defend the suit because of his cancer, noting that the Iowa court had "follow[ed] the recommendations of Mr. Seibert's oncologist" when it continued the trial twice. (*Id.* at 53.) Additionally, the Bankruptcy Court pointed to an admission that Seibert had made earlier in the adversary proceeding, acknowledging that his decision to take a default had been informed by his bankruptcy attorney's advice "not to participate in trial, for

5

legal and tactical reasons." (*See In re Seibert*, 16-ADV-4103 [Doc. No. 16] (Resp. to Mot. of Thomas F. Miller to Withdraw, ¶ 3); Tr., at 53-54.)  Ultimately, the Bankruptcy Court found that Seibert "actively and substantially participated" in the Iowa suit, had a full and fair opportunity to defend the suit, and "specifically chose not to participate in the trial or damages hearing." (Tr., at 54.)  The Bankruptcy Court held that collateral estoppel applied to bar Seibert from contesting summary judgment, stating, "[c]ollateral estoppel cannot be avoided by failing to appear and plead, especially when the party has been actively involved in the lawsuit up until the final trial or hearing on damages." (*Id.* at 54.)

The Bankruptcy Court determined that the damages award and attorneys' fees award from the Iowa suit were excepted from discharge in bankruptcy. (*Id.* at 57-58.)  It further determined that Seibert's debt from an earlier judgment in that litigation, holding Seibert in contempt for discovery violations, was discharged in bankruptcy. (*Id.* at 56.)

Seibert now appeals, arguing that collateral estoppel does not apply to default judgments. (Appellant's Principal Br. [Doc. No. 15], at 24-28.)  Seibert further argues that his default judgment should not have preclusive effect, because the Iowa court heard no contested evidence on the issue of fraud, and because he did not act in bad faith in taking the default judgment. (*Id.* at 31-38.)  Finally, Seibert asserts that the Bankrupty Court erred by failing to consider the mitigating circumstances surrounding his default judgment. (*Id.* at 38-41.)

## II. DISCUSSION

### A. Standard of Review

In an appeal from a bankruptcy court proceeding, this Court acts as an appellate court. *See* 28 U.S.C. § 158(a). Section 158(a)(1) grants the Court appellate jurisdiction "from final judgments, orders, and decrees," whereas §§ 158(a)(2)-(3) confers appellate jurisdiction from certain interlocutory orders. *See In re M & S Grading, Inc.*, 526 F.3d 363, 368 (8th Cir. 2008).

On appeal, the Bankruptcy Court's legal conclusions are reviewed de novo and its findings of fact are reviewed for clear error. *Tri-State Fin., LLC v. First Dakota Nat'l Bank*, 538 F.3d 920, 923-24 (8th Cir. 2008). "Under the clearly erroneous standard, we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made." *Roemmich v. Eagle Eye Dev., LLC*, 526 F.3d 343, 353 (8th Cir. 2008) (citation and internal quotation marks omitted).

### B. Applicable Law

#### 1. Summary Judgment

Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1107 (8th Cir. 2016). The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed. *Id.* at 1042. However, a party opposing summary judgment "'may not rest upon the mere

allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)).

### 2. Collateral Estoppel

The Iowa default judgment was issued by a federal court, so federal principles of collateral estoppel will determine whether it has preclusive effect. *See Heiser v. Woodruff*, 327 U.S. 726, 731-32 (1946); *In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). Collateral estoppel, also known as issue preclusion, has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102-03 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)). The parties in this case disagree as to whether the default judgment meets the "actually litigated" requirement. (Appellant's Primary Br., at 24-28; Appellees' Br. [Doc. No. 18], at 28-33.)

The general rule is that a default judgment does not give rise to collateral estoppel. "'In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.'" *Arizona v. California*, 530 U.S. 392, 414 (2000) (quoting Restatement (Second) of Judgments § 27 cmt. e (Am. Law Inst. 1982)). Several circuits have recognized

this general rule. *See Bush*, 62 F.3d at 1323; *In re Leonard*, 644 F. App'x 612, 617 (6th Cir. 2016); *In re Jordana*, No. 99-6194, 2000 WL 783401, at *1 (10th Cir. June 20, 2000). But several circuits have also recognized an exception to the general rule when the party against whom preclusion is asserted substantially participated in the prior litigation before the default judgment. The leading cases are *In re Daily*, 47 F.3d 365 (9th Cir. 1995), *In re Bush*, 62 F.3d 1319 (11th Cir. 1995), and *In re Docteroff*, 133 F.3d 210 (3d Cir. 1997).

In *Daily*, the FDIC sought to prevent Daily from discharging his judgment debt in bankruptcy. 47 F.3d at 366. In the prior action for fraud and RICO violations, Daily had resisted the FDIC's discovery requests for nearly two years, until the FDIC moved for sanctions. *Id.* at 367. Both parties fully briefed and argued the motion, and the court found that Daily's "strategy of delay and evasiveness" had "significantly interfered with the judicial process." *Id.* The court entered a default judgment against Daily as a sanction under Federal Rule of Civil Procedure 37. *Id.* The bankruptcy court applied collateral estoppel to prevent Daily from opposing the FDIC's adversary action. *Id.*

The Ninth Circuit affirmed. The court acknowledged the general rule that default judgments are not actually litigated, but emphasized that Daily's had not been "an ordinary default judgment," because "Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claim and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him." *Id.* at 368. The court held:

> A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial

9

> determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

*Id.* The court further noted that the policy reasons supporting the ordinary rule against granting preclusive effect to a default judgment did not apply in that case: "It cannot be said, for example, that the RICO action involved so small an amount or was brought in such an inconvenient forum that the costs of litigation ultimately outweighed the burden of a default judgment." *Id.* at 368 n.6 (citing Restatement (Second) of Judgments § 27 cmt. e (Am. Law Inst. 1982)).

*In re Bush* also involved an adversary proceeding to except a judgment debt from discharge in bankruptcy. 62 F.3d at 1322. The creditor had sued Bush in federal district court for fraud. Bush had initially been represented, but his counsel withdrew after several months, claiming inability to reach him. *Id.* at 1321. Bush then failed to produce trial exhibits, misrepresented that he was out of town when he was supposed to appear for a deposition, and failed to appear at a pre-trial conference. *Id.* The court entered a default judgment against Bush as a sanction under Federal Rule of Civil Procedure 37. *Id.* at 1321-22. In the adversary proceeding, the bankruptcy court gave this decision preclusive effect and held the debt nondischargeable. *Id.* at 1322.

The Eleventh Circuit affirmed. The court agreed with the Ninth Circuit's reasoning in *Daily* and held that collateral estoppel may bar relitigation after a default judgment "[w]here a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even

10

attempts to frustrate the effort to bring the action to judgment." *Id.* at 1325. The court observed that "Bush had ample warning from the prior court and could reasonably have foreseen the conclusive effect of his actions." *Id.*

*In re Docteroff* has a similar factual background. Docteroff's creditor filed an adversary action against him to prevent him from discharging a judgment debt in bankruptcy. 133 F.3d at 214. In the prior action, Docteroff initially participated by filing an answer and noticing the plaintiff for a deposition, but then he "repeatedly and in bad faith" refused to submit to depositions or respond to discovery requests. *Id.* at 213. The court entered a default judgment as a sanction under Federal Rule of Procedure 37. *Id.* at 213-14. The bankruptcy court gave the judgment preclusive effect and excepted the judgment debt from discharge, and the Third Circuit affirmed. *Id.* at 214. The court noted that the default was "not a typical default judgment where a defendant neglects or elects not to participate in any manner because of the inconvenience of the forum selected by the plaintiffs, the expense associated with defending the lawsuit, or some other reason." *Id.* at 215. Instead, "for several months, Docteroff participated extensively in the lawsuit" before he "[a]pparently . . . realized the meritlessness of his position and decided to frustrate orderly litigation by willfully obstructing discovery." *Id.* The court concluded that "a party such as Docteroff, who deliberately prevents resolution of a lawsuit, should be deemed to have actually litigated an issue for purposes of collateral estoppel application." *Id.* (citing *Daily*, 47 F.3d at 368).

Several courts in other circuits have applied this exception as formulated in *Daily*, *Bush*, and *Docteroff*. *See Leonard*, 644 F. App'x at 617 ("[Preclusion] interests *do* come

into play when default is entered as a procedural sanction for lack of good-faith participation in the litigation process."); *In re Corey*, 583 F.3d 1249, 1253 (10th Cir. 2009) (agreeing with the holdings in *Daily*, *Bush*, and *Docteroff*); *Herbstein v. Bruetman*, 266 B.R. 676, 685 (N.D. Ill. 2001) ("In this atypical setting for default judgment, where Dr. Bruetman participated extensively then failed to comply with an express court order issued multiple times at a risk of incurring default, . . . Dr. Bruetman should not now be able to sidestep the collateral estoppel doctrine and litigate an issue in this forum that was forestalled in New York due solely to Dr. Bruetman's decisions."), *aff'd*, 32 F. App'x 158 (7th Cir. 2002) ("On the merits, we affirm for the reasons given by the district judge."). *But see In re Gilson*, 250 B.R. 226, 234-35 (Bankr. E.D. Va. 2000) (rejecting the exception as subjective and difficult to evaluate).

Overwhelmingly, the cases applying this exception point to some degree of bad faith or obstructive litigation conduct on the part of the defendant prior to the default judgment. *See Jordana*, 2000 WL 783401, at *1 (applying preclusion when a party "has engaged in serious obstructive conduct resulting in a default judgment"); *Docteroff*, 133 F.3d at 215 (applying preclusion when a party "deliberately prevents resolution of a lawsuit"); *Bush*, 62 F.3d at 1325 (applying preclusion when a party "attempts to frustrate the effort to bring the action to judgment"); *Daily*, 47 F.3d at 368 (applying preclusion when a party "deliberately precludes resolution of factual issues through normal adjudicative procedures"); *In re Sly*, 280 B.R. 261, 267 (Bankr. N.D. Fla. 2002) (finding that preclusion does not apply, because Sly's behavior "did not rise to the level of serious misconduct or obstructive behavior"); *see also* 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4442

n.8 (2d. ed. 1987) ("The Docteroff decision presents an exceptional rule, not to be applied rigidly in all instances of procedural default, using bad faith as the hallmark." (internal quotation marks omitted)).

The Eighth Circuit has not considered whether or in which circumstances collateral estoppel should apply to a default judgment. Finding the cases outlined above to be persuasive, the Court holds that collateral estoppel may apply to a default judgment when the party against whom the judgment was entered substantially participated in the litigation and engaged in bad faith conduct to frustrate the legal process prior to the default. When these circumstances are present, it should not matter whether the default was entered under Rule 37 or Rule 55 of the Federal Rules of Civil Procedure, because giving the default judgment preclusive effect will further the policy of collateral estoppel and discourage obstructive conduct. *See* Restatement (Second) of Judgments § 27 cmt. e (Am. Law Inst. 1982) ("[E]ven if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate."); *see also Corey*, 583 F.3d at 1252 ("The purposes of issue preclusion are promoted by such preclusion: [the creditor] is not again subjected to the burdens of litigating the fraud issue and the fraud issue is resolved consistently by the two courts. Moreover, imposing preclusion on Mr. Corey is neither unfair to him nor likely to discourage constructive behavior (such as compromise in litigation); on the contrary, applying preclusion doctrine here is likely to discourage obstructive and delaying tactics.").

### C. Analysis

Seibert argues that no exception applies which would permit collateral estoppel based on his default judgment, because the Iowa court did not make any findings of fact about his fraud, and because it explicitly rejected any finding of bad faith. (Appellant's Primary Br., at 31-38.) But the exception does not require factual findings in the prior action in order to give a default judgment preclusive effect. *See supra* Part II.B. What matters is that the party against whom collateral estoppel is asserted abused the litigation process, not that the prior court actually decided the issue in question. *See, e.g.*, *Daily*, 47 F.3d at 368-69 ("[D]enying preclusive effect to the RICO judgment on the ground that the issues relevant to discharge were not fully tried in that proceeding would permit Daily to delay substantially and perhaps ultimately avoid payment of the debt by deliberate abuse of the judicial process.").

Seibert is correct that the exception permitting a default judgment to have preclusive effect ought to apply only when there has been bad faith litigation conduct. Seibert argues that the Iowa court specifically rejected Appellees' arguments that he had acted in bad faith. (Appellant's Primary Br., at 15-17.) But these decisions by the Iowa court concerned Appellees' earlier motions for sanctions, based on Seibert's failure to comply with a motion to compel and his failure to make certain pretrial disclosures. (*See Cedar Rapids*, No. 09-cv-175 [Doc. No. 216] (Order dated Jan. 18, 2012, at 3-4, 7-10).) They do not foreclose the conclusion that, based on his entire course of conduct in the litigation, Seibert acted in bad faith. Further, the Bankruptcy Court held that Seibert's debt arising from those decisions was not excepted from discharge. (Tr., at 56.)

The Bankruptcy Court did not expressly consider whether Seibert obstructed or frustrated litigation of the Iowa case in bad faith. But the evidence on the record is sufficient for this Court to find as a matter of law that he did. Seibert does not allege that any of the Bankruptcy Court's findings were clearly erroneous, so the Court considers it admitted that Seibert "actively participated in the Iowa lawsuit over a nearly three-year period of time," and that he "admitted he made the decision not to participate in the trial and take a default judgment for legal and tactical reasons." (Tr., at 44, 53.) Seibert claimed that his health prevented him from attending the pretrial conference. But he had already obtained two continuances based on his oncologist's recommendation, and he made no attempt to obtain another before the final pretrial conference. The Bankruptcy Court also found that Seibert was traveling for personal and business reasons in Florida at the time he failed to appear telephonically for the post-default damages hearing. (*Id.* at 45.) The Bankruptcy Court gave no weight to this fact, but this Court considers Seibert's willful refusal to appear, even telephonically, when he was physically able to travel to be further proof of bad faith conduct during the Iowa litigation.

Seibert's failure to appear for the final pretrial conference prevented Appellees from trying the case to its conclusion after they had expended significant resources to litigate the case for years. His actions are comparable to those of the defendant in *Kelley v. Ahern*, 541 B.R. 860 (W.D. Wis. 2015). In *Kelley*, the court noted that the defendant "forced [the plaintiffs] to expend the time and resources necessary to litigate the case until the very end, defaulting only after the parties had been litigating for almost three years." *Id.* at 864. The court found a strong case for preclusion, even though the defendant's counsel had

15

withdrawn for failure to pay fees, because the defendant continued to litigate pro se "for almost two years" before the default, making it "difficult to see Ahern's decision to skip the trial as anything other than a tactical decision." *Id.*

Here, like in *Kelley*, Seibert's tactical decision to take a default judgment on the eve of trial was intended to frustrate the legal process. His averments that his health prevented him from appearing are belied by his failure to move for a continuance, and by his admission that his decision was for "legal and tactical reasons." Seibert must be bound by the Iowa court's default judgment. To hold otherwise would "give litigants who abuse the process and dignity of the court an undeserved second bite at the apple." *Docteroff*, 133 F.3d at 215. The Court holds that the Iowa court's default judgment estops Seibert from contesting the dischargeability of his judgment debt.

### III. CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** the Bankruptcy Court's September 28, 2017 Judgment is AFFIRMED.

Dated:  April 10, 2018                        s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge